UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23529-CIV-MCALILEY
(CONSENT CASE)

ERIKA LABROUSSE,

    Plaintiff,

v.

CARIBBEAN AIRMAIL, INC., and
ALEX VALME,

    Defendants.
_____/

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendants' Motion for Summary Judgment [DE 36]. I have reviewed the parties' written submissions, the record, and applicable law. For the reasons stated below, Defendants' motion is denied.

### I.  BACKGROUND

Plaintiff, Erika Labrousse ("Labrousse"), began working for Defendant, Caribbean Airmail, Inc. ("Caribbean"), in February, 2007. [*See Affidavit of Erika Labrousse* [DE 39-2] at p. 1; *see Caribbean's Statement of Undisputed Facts* [DE 42-1] at p. 1].[1] In May, 2007, Labrousse was promoted to the position of Compliance Analyst. [*See* DE 39-2 at p. 1; DE

---

[1] Defendants initially incorporated their statement of undisputed facts into their memorandum of law in support of their motion for summary judgment [DE 36-1]. Defendants acknowledged they had failed to support some of their statements with record evidence [DE 41, at p. 3], and submitted a supplemental statement of undisputed facts [DE 42-1]. For the reasons explained later, the Court considers both that late-filed statement of undisputed facts, and the record evidence as a whole, in reaching its conclusion that summary judgment must be denied.

42-1 at p. 2].

In December, 2008, Labrousse learned that she was pregnant. [*See* DE 42-1 at p. 3; *see* DE 39-1 at p. 4]. On April 20, 2009, Labrousse gave Caribbean a note from her obstetrician, Dr. Pierre-Richard Limousin ("Limousin"), stating that her pregnancy was considered "high risk," and that Labrousse would need certain accommodations, including a reduced work schedule of no more than 25 hours per week. [*See* DE 42-1 at p. 3; *see* DE 39-2 at p. 2]. Defendants contend that the same day, April 20, 2009, was also the date Labrousse's schedule was to change from 9:00 a.m. until 6:00 p.m. to 10:00 a.m. until 7:00 p.m. [*See* DE 42-1 at p. 3; *see also* DE 36-16].[2] That same day, Labrousse submitted paperwork, supplied by Defendants, to apply for maternity leave, or leave under the Family Medical Leave Act ("FMLA"). [*See* DE 39-2 at p. 2]. The following day, April 21, 2009, Defendant Alex Valme ("Valme"), the Human Resources and Compliance Manager, gave Labrousse a letter stating that Labrousse could take FMLA leave for up to 12 months, or be terminated, as Caribbean did not have any part-time positions available. [*See* DE 39-2 at p. 3; *see* DE 36-10 at p. 4].[3]

---

[2] Labrousse argues that this claim should not be credited, as it is unsupported by citation to any record evidence. Labrousse is correct that in both their initial and supplemental statements of undisputed facts, Defendants fail to cite to the record to support this assertion. Defendants did, however, attach to their initial submission an email from Alex Valme to Erika Labrousse dated April 15, 2009, which states that this schedule change would go into effect as of April 20, 2009. [*See* DE 36-16].

[3] Although the letter said that 12 months leave was available under the FMLA, Defendants state that this was an error, and that the letter should have stated 12 weeks. [*See* DE 42-1 at p. 8]. Indeed, the FMLA provides unpaid leave for a maximum of 12 weeks, not 12 months. *See* 29 U.S.C.

According to Labrousse, she told Valme that she had already submitted her FMLA paperwork, and would take leave rather than be terminated. [*See* DE 39-2 at p. 3]. Labrousse attests that Valme then told her she did not understand him, and that she was fired. [*See id*.]. Valme denies ever telling Labrousse she was fired; instead, he claims only to have given her the letter with the option of FMLA leave or termination. [*See* DE 36-10 at p. 4]. Labrousse claims that Valme then told her that she should apply for unemployment benefits, so at least she could get some money. [*See* DE 39-2 at p. 3]. Defendants state that Labrousse sent a letter to Caribbean on April 22, 2009, in which she stated that she needed time to think about whether to go on FMLA leave. [*See* DE 36-10 at p. 4]. Caribbean states that it replied to her letter, stating that her original request for intermittent FMLA leave was denied, but that she could still apply for full FMLA leave. [*See* DE 36-10 at pp. 3-4; *see also* DE 39-2 at p. 3]. Labrousse claims she resubmitted her FMLA application on April 29, 2009. [*See* DE 39-2 at p. 3]. Defendants contend that Labrousse did not resubmit her request for FMLA leave, and did not submit the necessary medical paperwork to request FMLA leave. [*See* DE 42-1 at p. 9]. On April 24, 2009, Labrousse applied for unemployment benefits [*See* DE 39-2 at p. 3; *see* DE 36-10 at p. 4], and her application was denied. [*See* DE 39-2 at p. 3; *see* DE 36-10 at p. 4]. Labrousse claims that she was denied unemployment benefits because Caribbean contested the application, falsely stating that she had quit her job. [*See* DE 39-2 at p. 3]. Defendants do not offer any explanation as to why Labrousse's unemployment

---

§§ 2601 *et seq*.

benefits were denied, but they do insist that Labrousse "self terminated" her employment. [*See* DE 42-1 at p. 3].

On November 20, 2009, Labrousse filed her Complaint, and on January 8, 2010, filed an Amended Complaint bringing the following claims against both Defendants: (1) violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*; (2) retaliation and interference under the FMLA; (3) breach of contract; (4) anticipatory repudiation; and (5) promissory estoppel.[4] Caribbean now moves for summary judgment on all counts in the Amended Complaint except for Count 5, promissory estoppel. [*See* DE 36].[5]

## II. LEGAL STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*,

---

[4] The Amended Complaint was never docketed as a separate docket entry. Defendants moved to dismiss the original Complaint [DE 8], and in her response to that motion Labrousse attached an Amended Complaint [DE 10-1]. Defendants moved to dismiss the Amended Complaint [DE 11]. Judge Jordan denied both motions to dismiss. [DE 13].

[5] Defendants, in a subheading in their motion, reference the promissory estoppel claim [DE 36, at p. 4], but nowhere in the motion, nor in the memorandum of law, do they provide any argument why summary judgment should be granted on that claim. [*See* DE 36, at p. 4; DE 36-1 at p. 21-22].

117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"For factual issues to be considered genuine, they must have a real basis in the record . . . mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper "against

5

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### III. ANALYSIS

Defendants move for summary judgment on each count of Labrousse's Amended Complaint, except, as noted above, Labrousse's claim of promissory estoppel. As a threshold matter, Labrousse argues that Defendants' motion should be denied in its entirety for failure to comply with local rules regarding Defendants' statement of undisputed facts. This Court's Local Rules require, for motions for summary judgment, that a party's statement of material facts be "supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court." Local Rule 7.5(c)(2). As one court in this District noted, this requirement "is *mandatory*, not optional." *Castillo v. Cessna Aircraft Co.*, 712 F. Supp. 2d 1306, 1309 (S.D. Fla. 2010) (emphasis in original).

As part of their memorandum of law in support of their motion for summary judgment, Defendants filed a statement of undisputed facts. [*See* DE 36-1]. Labrousse correctly points out that the majority of assertions in Defendants' statement have no factual support whatsoever. Labrousse urges this Court to deny Defendants' motion for failure to support the statement of material facts with record evidence. Like the court in *Castillo*, I "decline to

6

invoke such a draconian remedy." 712 F. Supp. 2d at 1309. While Defendants' initial statement of facts is severely lacking, they filed a supplemental statement of facts in which they support most of their assertions with citations to the record. [*See* DE 42-1]. Moreover, while Defendants did not provide citations to the record in their initial statement of facts, those facts were, indeed, supported by affidavits and depositions on file with the court. Accordingly, I will not deny Defendants' motion on that basis; instead I consider the merits of the motion. Each of Defendants' arguments is discussed in turn.

### A.   Interference under the FMLA

The FMLA provides, in relevant part, that eligible employees are entitled to 12 workweeks of leave during any 12-month period "because of a serious health condition that makes the employee unable to perform the functions of the position. . . ." 29 U.S.C. §2612(a)(1)(D). The Act creates a private right of action against any employer who violates section 2615 of the statute. 29 U.S.C. § 2617(a). That section makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [under the Act]," (an interference claim); it also makes it "unlawful for any employer to discharge or in any manner discriminate against any individual for opposing any practice made unlawful [under the Act]," (a discrimination or retaliation claim). 29 U.S.C. § 2615(a)(1) and (2). Labrousse brings both an interference and retaliation claim against the Defendants.[6]

---

[6] Count I of the Amended Complaint is titled "Violation of the . . . Act" and asserts that Labrousse was entitled to leave, and that Defendants violated the Act by denying that leave. Although it is not so labeled, I understand this to be an interference claim. [*See* DE 10-1, at p. 5]. Count II is entitled "Retaliation and Interference under the [Act]" and asserts both interference and

The proof required of an interference claim is quite simple: "[t]o establish an interference claim, 'an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied.'" *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010) (quoting *Strickland v. Water Works and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206-07 (11th Cir. 2001)). The employee need not allege that his employer intended to deny the benefit, because "the employer's motives are irrelevant." *Id.* Defendants make several arguments why summary judgment should be granted in their favor on this claim.

First, they argue that Labrousse's interference claim fails because she presented no medical evidence that she had a serious health condition sufficient to support FMLA leave. This argument ignores the letter from Labrousse's obstetrician, Dr. Limousin, that asserted that that Labrousse's pregnancy was high-risk, and that she could not work more than 20 to 25 hours per week. [*See* DE 36-12]. "Although a normal pregnancy might not qualify as a 'serious health condition' under the FMLA, pursuant to 29 C.F.R. § 825.115(b) 'any period of incapacity due to pregnancy, or for prenatal care' does qualify as a serious health condition." *De-Undre Atkins v. Wayne-Dalton Corp.*, No. 3:09cv561/RS-EMT, 2010 U.S. Dist. LEXIS 111554 at *5 (N.D. Fla. Oct. 20, 2010) (quoting 29 C.F.R. 825.115(b)). Contrary to Defendants' assertion, Dr. Limousin's letter established that Labrousse had a serious health

---

retaliation claims. Thus, I understand the motion for summary judgment on the interference claim to address both Counts I and II.

condition that entitled her to FMLA leave.[7]

Defendants next argue that this letter conveyed false information; that Labrousse did not have a high risk pregnancy, and for this reason summary judgment must be entered on her interference claim. In fact, at his deposition, Dr. Limousin stated that the letter he provided to Labrousse was a generic letter, and that Labrousse did not have a high risk pregnancy that required a shortened work day. [*See* DE 41-1 at p. 22- 29]. Defendants claim that Labrousse did not have a serious health condition, and therefore was not entitled to FMLA leave.

As Labrousse correctly points out, the law in this circuit is clear that "'after-acquired evidence cannot be used as the basis for Defendants' employment decision.'" *Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1232 (11th Cir. 2004); quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1068 n.101 (11th Cir. 2000). As the Supreme Court explained, where an employee's misconduct was not discovered until after she had been terminated, "[t]he employer could not have been motivated by knowledge it did not have." *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995).[8]

---

[7] Defendants contend that Labrousse's failure to support her request for leave with documentation also justifies summary judgment. Like their other arguments, this too is unpersuasive. While Defendants may have reasonably required Labrousse to submit more detailed medical evidence, viewing the facts of this case in the light most favorable to Labrousse, as this Court must do when considering summary judgment, Labrousse did not have time to provide additional medical records, as she was terminated the day after she submitted the letter from Dr. Limousin.

[8] Although *Conroy* and *McKennon* involved claims under the Age Discrimination in Employment Act, the principle cited applies generally in employment actions.

Here, Defendants learned well after Labrousse was terminated, when they deposed Dr. Limousin, that Labrousse did not have a high risk pregnancy. The only information available to Defendants at the time of Labrousse's termination was the letter from Dr. Limousin stating that Labrousse had a high risk pregnancy. That Labrousse's pregnancy was not actually high risk, did not cause Defendants to deny her FMLA leave. Defendants motion on this ground fails.[9]

Next, Defendants argue that they had no obligation to provide Labrousse with part-time FMLA leave. As a practical matter, given Ms. Labrousse's job responsibilities and the size of her department, Defendants claim they could not accommodate her request for "intermittent" FMLA leave. And, as a legal matter, Defendants assert (without citing any legal authority) that FMLA regulations provide that intermittent leave for birth is subject to employer approval. [DE 36-1 at pp. 13-14]. However, in a later section of their memorandum of law, Defendants cite a portion of the Department of Labor's website, in which it explains the use of intermittent leave under the FMLA.

> FMLA guidelines pertaining to leave entitlement state that "[i]f the FMLA leave is for birth and care, or placement for adoption or foster care, use of intermittent

---

[9] Moreover, the fact that Labrousse's pregnancy was not "high risk" does not, in itself, render her claim for FMLA leave invalid. Under the FMLA, "'any period of incapacity due to pregnancy, or for prenatal care' does qualify as a serious health condition," warranting leave. *De-Undre Atkins*, 2010 U.S. Dist. LEXIS 11154 at *5. There is no requirement that a pregnancy be "high risk," only that the individual suffers incapacity due to the pregnancy. Dr. Limousin testified at deposition that Labrousse suffered from bleeding episodes early in her pregnancy, and that later in the pregnancy she had difficulty moving, bending, and walking. [*See* DE 41-1 at pp. 22, 29]. Thus, there is record evidence that could support a finding that Labrousse had a "serious health condition," 29 U.S.C. § 2612(a)(1)(D), such that she was entitled to FMLA leave.

10

>leave is subject to the employer's approval". *See*, U.S. Department of Labor-Wage and Hour Division (WHD)-Fact Sheet #28:  The Family and Medical Leave Act of 1993", which can be found at http://www.dol.gov/whd/regs/compliance/whdfs28.htm.

[DE 36-1 at p. 20, n. 6]. Defendants' citation to this section of the Department of Labor's FMLA guidelines undercuts its argument, as it specifically states that intermittent leave for *birth and child care* is subject to employer approval. Labrousse did not seek intermittent leave for birth and child care, but for *her own asserted serious health condition* caused by her pregnancy. Accordingly, the Department of Labor's Fact Sheet pertaining to intermittent leave does not apply in this case, and Defendants' motion also fails on that ground.

Finally, Defendants argue that there is no evidence in the record that Labrousse was terminated after she submitted her FMLA leave request. Defendants point to affidavits from Caribbean employees who deny firing Labrousse, but ignore record evidence submitted by Labrousse to the contrary. Specifically, in her affidavit and her deposition, Labrousse testified that the day after she submitted her request for FMLA leave, Valme told her she was terminated, and  suggested she apply for unemployment benefits. Whether Labrousse voluntarily left her job, or was fired, is very much in dispute, and the dispute certainly is material. Because this highly disputed fact must be viewed in favor of Labrousse, the non-moving party, Defendants' motion for summary judgment on this ground fails.

Each of Defendants' arguments for summary judgment on Labrousse's FMLA interference claim fails. Accordingly, summary judgment on the interference claims in Counts I and II is denied.

**B.     Retaliation under the FMLA**

Defendants also seek summary judgment on Labrousse's claim of retaliation under the FMLA. To state a claim of FMLA retaliation, a plaintiff must show: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Walker v. Elmore County Bd. of Educ.*, 379 F.3d 1249, 1252 (11th Cir. 2004). In this case, Labrousse contends that she submitted a request for FMLA leave, and as a result her employment was terminated the next day.

Defendants first argue that Labrousse's request for leave was incomplete, as it was not accompanied by the proper certification of her health care provider, nor the signature of Labrousse's supervisor, as required. Defendants cite no case law holding that a failure to complete all FMLA paperwork may cause a retaliation claim to fail, and such an assertion appears contrary to the spirit and purpose of the FMLA. Labrousse contends she was terminated the day after she submitted her initial request for FMLA leave, effectively preventing her from completing the necessary paperwork. An employer cannot avoid FMLA requirements by terminating an employee before she can fully complete an application.

Defendants concede that Labrousse engaged in statutorily protected activity by submitting an FMLA leave request, but claim she failed to establish the second element – that she suffered an adverse employment decision – because she "self-terminated" her employment. As discussed earlier, the parties dispute whether Labrousse was fired or quit of her own accord. Because Labrousse is the non-moving party, this Court must view any disputed fact in her

favor. Accordingly, Defendants' claim that Labrousse voluntarily quit her job cannot serve as a basis for this Court to grant summary judgment.

Defendants emphasize that Labrousse did not actually have a high-risk pregnancy, and insists that this renders her FMLA retaliation claim invalid. Once again, Defendants rely on after-acquired evidence to support its position, which is not permitted. *Conroy*, 375 F.3d at 1232. That information had no bearing on Defendants' decision to terminate Labrousse after she submitted her request for FMLA leave, and cannot serve as a basis for summary judgment in their favor.

Defendants argue that Labrousse failed to establish the third element of a retaliation claim: that her termination was causally connected to her request for FMLA leave. The Eleventh Circuit has explained that "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). However, this rule does not apply "where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Id*. Defendants claim that "neither Valme nor management had any knowledge that Plaintiff would be applying for full FMLA leave at the time they issued the letter to her in which she was advised of her choice between going on full FMLA leave or that her employment would be terminated." [DE 36-1 at p. 19]. Therefore, Defendants argue, Labrousse has not established a causal connection

between her request for FMLA leave and her termination.

In making this argument Defendants ignore Labrousse's deposition testimony and affidavit, that Valme fired her one day after she told him that she wanted FMLA leave. On this record, there is no "unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Brungart*, 231 F.3d at 799. Whether Labrousse was fired the day after she filed for FMLA leave, or whether she quit her job, is a hotly contested material fact. With a material fact in dispute, this Court can not enter summary judgment.

### C.     Breach of Contract and Anticipatory Repudiation

Defendants contend that Labrousse's breach of contract and anticipatory repudiation claims both fail because Labrousse quit her job. As already noted, repeatedly, a genuine issue of material fact is in dispute as to whether Labrousse was fired or quit. Viewing this disputed fact in favor of Labrousse, as the Court must, summary judgment must be denied.

### D.     Florida Labor Laws

At the end of Count IV, Labrousse's claim for anticipatory repudiation, she tacks on this statement: "Plaintiff also claims that Defendants violated all applicable sections of the Florida Labor Laws." [DE 10-1, at p. 7]. Defendants construe this as a "count for violation of Florida Labor Laws" and asks the court to enter summary judgment on this claim. [*See* DE 36-1 at pp. 22, 23]. Defendants state that they have no information to explain this claim, other than Labrousse's response to an interrogatory, in which she asserted that Defendants violated

Florida Statute 448.01.[10]  Further, Defendants report that at her deposition, Labrousse was unable to explain how they violated that law.  [*Id*.].  Understandably, Defendants write that they "do no[t] know how to defend a claim that is not properly framed and on which there is no record evidence to support it." [*Id*. at p. 23].  In her response, Labrousse does not address this argument.

I do not view the reference to Defendants' alleged violations of "all applicable sections of Florida Labor Law" as an independent cause of action.  The Amended Complaint does not identify the law in question, the elements of a cause of action are not stated, nor are there any factual assertions how the unidentified law was violated.  This statement is surplusage, and therefore is not the subject of an order on summary judgment.

### E.     Promissory Estoppel

Defendants offer no argument, nor legal authority, why the court should grant summary judgment on Labrousse's claim of promissory estoppel.  That claim therefore will be resolved at trial.

### IV.  CONCLUSION

Defendants have not shown that they are entitled to judgment as a matter of law on any of Labrousse's claims.  All claims in the Amended Complaint will therefore proceed to trial

---

[10] It is worth noting that Fla. Stat. § 448.01 has been found to be unconstitutionally vague. *See Posely v. Eckerd Corp*. 433 F.Supp. 2d 1287,1310-1313 (S.D. Fla. 2006); *Ramsey v. Custom Tree Serv., Inc.*, 2007 U.S. Dist. LEXIS 71994 (M.D. Fla. Sept. 26, 2007) (agreeing with *Posley* that 448.01 is unconstitutionally vague); *Stone v. Crispers*, 2006 U.S. Dist. LEXIS 71997, 2006 WL 2850103 at *2 (M.D. Fla.)(noting that section 448.01 is "likely unconstitutional").

for resolution by a jury. Accordingly, it is ORDERED that:

1. Defendants' Motion for Summary Judgment [DE 36] is DENIED.

2. The Court is prepared to bring this case to trial in the near future. The parties are to confer and submit to the Court, no later than August 19, 2011, a proposed date for trial.

DONE and ORDERED chambers at Miami, Florida, this 11th day of August, 2011.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of record